STATE v. ALSTON

[161 N.C. App. 367 (2003)]

No. COA02-1612

(Filed 2 December 2003)

**1. Evidence— hearsay—synopsis of defendant's statement—recorded recollection**

A detective's synopsis of defendant's statement was correctly excluded from an assault prosecution where there was no showing that defendant had the required insufficient recollection, that the statement was necessary to refresh the officer's memory, or that the statement was inconsistent with testimony. N.C.G.S. § 8C-1, Rule 803(5).

**2. Evidence— defendant's statement—partial statement not used—whole not required**

A detective's synopsis of a nontestifying defendant's statement was not required to be admitted as the whole of the part after a detective testified about the same subject matter. The officer's testimony was based on his personal observations and no part of defendant's statement was offered as evidence.

---

**STATE v. ALSTON**

[161 N.C. App. 367 (2003)]

**3. Criminal Law— right to present defense—officer's statement excluded**

A nontestifying defendant claiming self-defense was not deprived of the right to present his defense by the proper exclusion of a detective's synopsis of his statement to officers.

**4. Homicide— self-defense—lack of evidence—involuntary manslaughter conviction**

A defendant is not required to present evidence to be entitled to an instruction on self-defense, but the error in not instructing on self-defense in this voluntary manslaughter prosecution was not prejudicial because defendant was convicted of involuntary manslaughter, which does not involve intent and which is therefore not excused by self-defense.

**5. Homicide— manslaughter—sufficiency of evidence**

A motion to dismiss a voluntary manslaughter charge (with an involuntary manslaughter conviction) was properly denied where the evidence, in the light most favorable to the State, showed that defendant shot the victim in the back as he was running away and immediately left with no regard to the victim.

**6. Criminal Law— verdict sheet and judgment correct—transcript incorrect**

A trial transcript was not corrected where it erroneously showed a conviction for voluntary manslaughter rather than involuntary manslaughter, but the verdict sheet and judgment were correct. Those are considered the official record, and a clerical error in the trial transcript will not prejudice defendant.

Judge GEER concurring.

Judge HUNTER dissenting.

Appeal by defendant from judgment entered 4 September 2002 by Judge Clifton W. Everett, Jr. in Wilson County Superior Court. Heard in the Court of Appeals 13 October 2003.

*Attorney General Roy Cooper, by Assistant Attorney General M. Elizabeth Guzman, for the State.*

*Angela H. Brown for defendant-appellant.*

STATE v. ALSTON

[161 N.C. App. 367 (2003)]

EAGLES, Chief Judge.

Defendant Willard Alston was convicted of involuntary manslaughter and sentenced to 25 to 30 months of incarceration. On appeal, defendant argues that the trial court erred by (1) failing to admit a police detective's synopsis of defendant's statement into evidence; (2) failing to instruct the jury on the law of self-defense; and (3) denying defendant's motion to dismiss. Defendant also requests that the trial transcript be corrected to reflect that he was convicted of involuntary manslaughter instead of voluntary manslaughter. After careful consideration of the transcript, record and briefs, we find no prejudicial error.

The evidence presented tends to show the following. Eric "E" Newton dated Muriel "Poo Poo" Horne for approximately three years before his death. Newton had been released from the IMPACT drug rehabilitation program in November 2000 and moved in with his grandfather and uncle. As a condition of his probation, Newton was confined to his home between the hours of 7 p.m. and 7 a.m. during the week and 3 p.m. until 9 a.m. on weekends.

Newton and Horne continued their romantic relationship after Newton returned from the IMPACT program in November 2000 until some time after Christmas 2000. Horne stated that the romantic relationship ended because Newton was violent towards her. Horne continued to see Newton several times each week even after they stopped dating. Horne habitually set her alarm clock for 8 a.m. because Newton normally came to visit her when his house arrest ended in the morning. Horne became romantically involved with defendant in January 2001.

On 10 February 2001, Newton invited Horne to his home to spend the evening. Newton called Horne on the telephone to ensure that Horne was coming to visit him. Horne told Newton during the phone call that she did not have a babysitter for her children and did not know if she would be able to visit him. On the evening of 10 February, Horne dropped off her children at their father's home and went out on a date with defendant. Horne received a message from Newton on her answering machine when she returned from her date with defendant. Newton did not identify himself in the message, but Horne recognized his voice. Newton asked in his message why Horne "lied so much" and sounded upset. On 10 February 2001, defendant stayed overnight at Horne's house.

Shortly after 9 a.m. on 11 February 2001, Horne and defendant were awakened by Newton who was beating on Horne's front door. Horne had forgotten to set her alarm clock for 8 a.m. before she went to sleep the evening before. Horne got out of bed when she heard Newton hitting the door and put on some clothes. Horne told Newton that she had company and that Newton could not come in. Newton began kicking Horne's front door and knocked the door down. Newton saw defendant sitting on Horne's bed. Defendant was not dressed when Newton entered the house. Newton jumped on defendant and the two men began struggling on Horne's bed. Horne testified that she did not see either of the men holding a gun before they began fighting.

Horne backed away from the bedroom where defendant and Newton were fighting. Horne heard three shots fired in the bedroom. The men continued to struggle, then Newton ran out of Horne's house. Newton said something to Horne as he passed by her, but continued to run out of the house and did not stop. Horne did not know what Newton said to her. Horne did not see any blood on Newton or other evidence of an injury. Defendant got dressed and Horne drove him to a local convenience store. Horne commented that defendant had not been shot. As Horne and defendant left her house, Horne's neighbor, Marvin Rogers asked them if they shot Newton. Defendant replied that everything was alright.

Rogers testified that he was outside on the morning of 11 February walking his puppy. Rogers saw Newton knocking on Horne's door and heard her tell Newton he could not come in because she had company. Rogers observed Newton kick Horne's door down. Rogers heard yelling inside Horne's home, heard three shots and saw Newton run out of Horne's home. Rogers testified that when Newton emerged from Horne's house Newton was "drooped over." When defendant and Horne came out of Horne's house a few minutes later, Rogers asked them, "[y]'all shoot that boy?" Defendant replied, "[h]e will be all right." Defendant put on his shirt and left with Horne in Horne's car. When Horne returned home a few minutes later, defendant was not with her. Horne asked Rogers to look for Newton because Newton's van was still parked outside her home. Rogers found Newton dead approximately three houses away from Rogers's home. Newton had gunshot wounds in his right arm and chest area. A medical expert testified that the chest wound was the most probable cause of death.

Defendant's aunt gave Wilson police officers a handgun on the afternoon of 11 February 2001 and stated that it had been used in the shooting that morning. Later that evening, defendant turned himself in to police at his grandmother's house. Defendant was indicted for voluntary manslaughter. The jury convicted defendant of involuntary manslaughter. He was sentenced to a term of imprisonment from 25 to 30 months. Defendant appeals.

[1] Defendant first argues that the trial court violated defendant's right to present a defense. Specifically, defendant contends that the trial court's refusal to admit a synopsis of defendant's statement given to police officers was reversible error. We disagree.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." G.S. § 8C-1, Rule 801(c) (2001). Here, defendant's statement regarding the confrontation with Newton given to Officer Hendricks outside of court was clearly hearsay. However, defendant argues that the statement to Hendricks falls within the recorded recollection exception to the hearsay rule, as described in G.S. § 8C-1, Rule 803(5):

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

G.S. § 8C-1, Rule 803(5) (2001).

Use of an earlier recorded statement or memorandum is also appropriate if necessary to refresh the witness's recollection or if the prior statement is used to impeach courtroom testimony that is inconsistent with the earlier statement. See State v. Demery, 113 N.C. App. 58, 437 S.E.2d 704 (1993). Here, however, there was no showing that defendant had an insufficient recollection of events to testify as required by Rule 803(5) so that his statement could be used as substantive evidence. In addition, there was no evidence or argument presented during trial that the proffered statement was necessary to refresh the testifying officer's memory or that the statement was inconsistent with the officer's testimony or any other witness's testimony in court. The synopsis of defendant's statement was not admis-

sible to impeach or corroborate defendant's in-court testimony, because defendant did not testify.

**[2]** Defendant argues that the State may not admit part of defendant's statement without admitting the whole statement into evidence. *See State v. Davis*, 289 N.C. 500, 223 S.E.2d 296, *vacated on other grounds*, 429 U.S. 809, 50 L. Ed. 2d 69 (1976). However, in this case, the State did not offer any part of defendant's statement as evidence. The State's witness, Officer Hendricks, testified regarding the events and observations he made during his investigation. These observations necessarily concerned the same subject matter as the defendant's statement, but were based upon the officer's personal observations and therefore unrelated to the statement.

**[3]** Defendant contends that the trial court's refusal to admit the officer's synopsis of defendant's statement denied defendant's right to present a defense. This argument is unpersuasive. The trial court does not deprive a criminal defendant of the right to present a defense by requiring that defendant follow the North Carolina Rules of Evidence. Here, nothing in the record or transcript indicates that the trial court prevented defendant from testifying on his own behalf or offering other witnesses or evidence. This assignment of error is overruled.

**[4]** Defendant further assigns error to the trial court's failure to instruct the jury on the law of self-defense. Defendant argues that the trial court incorrectly reasoned that defendant was not entitled to the instruction because he had not presented evidence. Defendant contends that requiring a defendant to testify or otherwise present evidence before the jury may be instructed on self-defense violates a defendant's right to be free from compulsory self-incrimination. We agree that the reasons given by the trial court for refusing the instruction on self-defense were incorrect. However, in this case, the failure to give the self-defense instruction to the jury did not create prejudicial error.

A defendant does not have to testify or offer evidence in order for the jury to be instructed on the law of self-defense:

> A defendant is entitled to an instruction on self-defense if there is any evidence in the record from which it can be determined that it was necessary or reasonably appeared to be necessary for him to kill his adversary in order to protect himself from death or great bodily harm. If, however, there is no evidence from

which the jury reasonably could find that the defendant in fact
believed that it was necessary to kill his adversary to protect him-
self from death or great bodily harm, the defendant is not entitled
to have the jury instructed on self-defense.

*State v. Bush,* 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982) (internal
citations omitted). Therefore, if defendant does not present evidence,
but based upon the State's evidence, the jury reasonably could find
that the defendant in fact reasonably believed it necessary to kill his
adversary to protect himself from death, the jury instruction on self-
defense should be given. Here, the trial court's reasoning that the self-
defense instruction should not be given because defendant failed to
present any evidence was erroneous.

However, defendant was not prejudiced by the trial court's
error. North Carolina law defines four different types of homicide
as follows:

> Murder in the first degree is the unlawful killing of a human
> being with malice and with premeditation and deliberation.

> Murder in the second degree is the unlawful killing of
> a human being with malice but without premeditation and
> deliberation.

> Voluntary manslaughter is the unlawful killing of a hu-
> man being without malice and without premeditation and
> deliberation. . . .

> Involuntary manslaughter is the unlawful killing of a human
> being without malice, without premeditation and deliberation,
> and without intention to kill or inflict serious bodily injury.

*State v. Norris,* 303 N.C. 526, 529, 279 S.E.2d 570, 572 (1981) (cita-
tions omitted). Here, defendant was indicted for voluntary
manslaughter. Voluntary manslaughter is considered an intentional
crime in that the act that causes death required some degree of
intent. *See State v. Ray,* 299 N.C. 151, 164, 261 S.E.2d 789, 797 (1980).
Generally, a defendant may be convicted of voluntary manslaughter if
(1) a killing occurs by reason of sudden anger or "heat of passion"
that temporarily removes reason and malice or (2) a premeditated
and deliberated first-degree murder or second-degree murder for
which the defendant has an imperfect right to self-defense. *See
Norris,* 303 N.C. at 529, 279 S.E.2d at 572. A defendant has the
defense of perfect self-defense to voluntary manslaughter, first-

degree murder or second-degree murder when all four of the following elements existed at the time of the killing:

> (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

> (3) defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

> (4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*Norris*, 303 N.C. at 530, 279 S.E.2d at 572-73. If a defendant was the aggressor or used excessive force, the defendant would have the defense of imperfect self-defense. *Norris*, 303 N.C. at 530, 279 S.E.2d at 572-73. When a defendant is indicted for an intentional first or second-degree murder, after applying the imperfect right of self-defense, the defendant is still guilty of at least voluntary manslaughter. *Norris*, 303 N.C. at 530, 279 S.E.2d at 573. Our Supreme Court has held that self-defense instructions are not appropriate in all cases:

> When asserted in response to a charge of intentional homicide such as second degree murder or voluntary manslaughter, a plea of self-defense is a plea of confession and avoidance. By it a defendant admits, for example, that he intentionally shot his assailant but that he did so justifiably to protect himself from death or great bodily harm.

*Ray*, 299 N.C. at 164, 261 S.E.2d at 797. The *Ray* court went on to explain that a self-defense instruction was appropriate when the defendant had been charged with second-degree murder or voluntary manslaughter, but was not appropriate for involuntary manslaughter. *See id.* Here, the trial court should have granted defendant's request for a jury instruction on the law of self-defense related to the charge of voluntary manslaughter. However, the absence of a self-defense instruction on the voluntary manslaughter charge did not prejudice defendant because he was not convicted of voluntary manslaughter.

**STATE v. ALSTON**

[161 N.C. App. 367 (2003)]

The trial court also instructed the jury on the lesser-included offense of involuntary manslaughter. The State presented evidence tending to show that defendant and Newton struggled in a bedroom with no other witnesses present in the bedroom. Horne testified that she did not observe that either of the men appeared to have a gun before they began fighting. Newton was wearing a coat when he entered Horne's house. Defendant was not wearing any clothes and in bed immediately before the struggle with Newton began. Horne also testified that she kept a gun in the bedroom where defendant and Newton struggled, but that she stored the gun behind the dresser. However, Horne's gun was still in place after the shooting occurred. Horne and Rogers both heard shots fired after the two men began struggling. Newton died from a gunshot wound, while defendant only suffered from scratches on his neck. From all the evidence, a reasonable juror could have concluded that Newton introduced a gun during the struggle with defendant and that defendant at some time handled that gun and shot Newton. Also, viewing all of this evidence, a jury could have reasonably concluded that defendant shot Newton in a criminally negligent or reckless manner during the struggle without forming the intent to assault or to kill Newton. However, self-defense, as an intentional act, could not serve as an excuse for the negligence or recklessness required for a conviction of involuntary manslaughter and no instruction on self-defense was required. Since defendant was convicted of the lesser-included offense of involuntary manslaughter, rather than the charged offense of voluntary manslaughter, the absence of an instruction on self-defense was not prejudicial error. This assignment of error is overruled.

[5] Defendant also assigns error to the trial court's denial of defendant's motion to dismiss at the close of all evidence. Defendant argues that the State failed to prove all elements of voluntary or involuntary manslaughter. Defendant contends that the evidence presented the complete defense of self-defense, which excused any crime committed by defendant. We disagree.

Upon a motion to dismiss, the trial court must view the evidence in the light most favorable to the State. *See State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). In this light, the evidence shows that defendant shot Newton in the back as he was running away from defendant. Defendant left the scene of the shooting immediately, with no regard for an injured Newton. The evidence in the light most favorable to the State does not give rise to a claim of self-defense for the voluntary manslaughter charge. Therefore, it was within the trial

court's discretion to deny defendant's motion to dismiss. This assignment of error is overruled.

[6] Defendant's final argument is that the trial transcript must be corrected. The transcript incorrectly reflects that defendant was convicted of voluntary manslaughter, while the judgment and verdict sheet correctly indicate that defendant was convicted of involuntary manslaughter. Defendant argues that this discrepancy may cause some prejudice to defendant during his incarceration or in the future when defendant's prior record level is calculated. We disagree. The judgment and commitment sheet are considered the official record of defendant's conviction. The information on the judgment is used for calculating defendant's prior record level or period of incarceration. If the judgment and commitment sheet contains the correct information, as it does here, defendant will suffer no prejudice from any clerical error in the trial transcript. Defendant's request to amend the trial transcript is denied.

For the reasons stated, we find no prejudicial error.

No prejudicial error.

Judge GEER concurs in the result with a separate opinion.

Judge HUNTER dissents.

GEER, Judge, concurring in the result.

I agree with Chief Judge Eagles' opinion regarding the refusal to admit a synopsis of defendant's statement to the police and the trial court's denial of defendant's motion to dismiss. I concur in the result as to the remainder of the opinion. I believe that the record contains insufficient evidence to support submission of the issue of self-defense to the jury and that the trial court therefore properly refused defendant's request for an instruction on that defense. Although I would not reach the issue of the propriety of the involuntary manslaughter instruction, I cannot, in any event, agree with the dissent that submission of that issue constituted prejudicial error.

As our Supreme Court has held, "before the defendant is entitled to an instruction on self-defense, two questions must be answered in the affirmative: (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was

that belief reasonable?" *State v. Bush*, 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982). If the evidence results "[in] a negative response to either question, a self-defense instruction should not be given." *Id.* at 161, 297 S.E.2d at 569. *See also State v. Lyons*, 340 N.C. 646, 662, 459 S.E.2d 770, 778 (1995) ("If there is no evidence from which a jury could reasonably find that defendant, in fact, believed it to be necessary to kill his adversary to protect himself from death or great bodily harm, defendant is not entitled to have the jury instructed on self-defense.").

I can find no evidence in the record that would permit a reasonable jury to find that defendant subjectively believed that he would be killed or would suffer great bodily harm if he did not kill the victim, Eric Newton. Given the limited evidence presented at trial, any such finding would be mere conjecture.

We know very little about what occurred during the fight between defendant and Newton. Newton kicked in Murial Horne's door and dived on defendant, who was naked and sitting on Horne's bed. Horne testified that the two men then began "tussling." As the men were "tussling," Horne backed away from the bedroom and saw nothing further. There is no evidence as to what happened in the bedroom from that point on except that Horne and a neighbor heard three shots fired within minutes after Newton entered the house. Newton ran from the house and was later found dead outside. An autopsy revealed that Newton was shot in the back and through his arm.

After Newton left the house, defendant got partially dressed and Horne drove him to the store. As defendant and Horne were leaving, a neighbor asked whether they had shot Newton and defendant replied, "He will be all right." Defendant had two or three scratch marks on his upper chest, but no other injuries.

There was no evidence that Newton had a weapon at any point. Horne gave a statement, admitted as substantive evidence, that she saw defendant holding a gun, but at trial claimed that she did not see a gun.

Defendant chose not to testify. The record therefore contains no direct evidence whether defendant believed that he needed to kill Newton to protect himself from death or great bodily harm. I agree that a defendant is not required to testify in order to be entitled to an instruction as to self-defense. If, however, he does not testify, the record must still contain other evidence of his state of mind. In the

absence of such other evidence, the trial court should not include an instruction on self-defense. *State v. Locklear*, 349 N.C. 118, 155, 505 S.E.2d 277, 298 (1998) ("Defendant offered no evidence that at the time of the shooting he believed, reasonably or unreasonably, that it was necessary to kill the victim in order to protect himself from imminent death or great bodily harm. Accordingly, the trial judge did not err by failing to instruct on self-defense."), *cert. denied*, 526 U.S. 1075, 143 L. Ed. 2d 559 (1999); *State v. Ross*, 338 N.C. 280, 283-84, 449 S.E.2d 556, 560 (1994) ("Defendant failed to present evidence to support a finding that he in fact formed a belief that it was necessary to kill the victim in order to protect himself from death or great bodily harm . . . . Therefore, the trial court did not err in failing to instruct on the State's burden of proof with regard to self-defense.").

In this case, in the absence of testimony by defendant as to his state of mind, there simply is not sufficient evidence to permit a jury to find that defendant had the required subjective belief. Newton was furious, but, based on the evidence, unarmed. The two men had a brief fight, with defendant being scratched two to three times. There is no evidence that Newton—who was 5 feet 9 inches tall and weighed 159 pounds—substantially exceeded defendant in size or had any other traits that made the fight a mismatch. While the evidence would support a finding that defendant feared being assaulted, that inference standing alone is not enough to warrant a self-defense instruction in a homicide case. It cannot circumstantially prove that defendant believed he needed to kill Newton or risk death or grave bodily harm.

In *Locklear*, the Supreme Court considered comparable evidence:

Defendant contends the evidence showed the following: that the victim was the aggressor; that defendant and the victim fought; that defendant bested the victim in the fight; that the victim then told defendant to wait, he would be right back; and that the victim then moved toward the shed, where he kept weapons.

349 N.C. at 154, 505 S.E.2d at 298. The Court found this level of evidence insufficient: "we conclude that the trial court did not err in refusing to give a jury instruction on self-defense." *Id.* The evidence relied upon in this case is not materially different from that of *Locklear*. I am unwilling to hold, as would necessarily be the result here, that a heated fight between two unarmed men over a woman without more necessarily gives rise to a fear of death or grave bodily harm sufficient to justify use of deadly force.

On appeal, defendant points to Horne's statement that she was afraid of Newton. Horne, however, explained that her fear was based on her prior experience with Newton and there was no evidence that defendant had knowledge of that experience. Nor was there any evidence that Horne and defendant were comparable physically. Without such evidence, Horne's subjective belief cannot substitute for and provide circumstantial evidence of defendant's personal belief.

Defendant argues that the requirement that he produce evidence of his actual state of mind requires him to incriminate himself in violation of the Fifth Amendment. As defendant did not raise this constitutional argument below, he is not allowed to assert it for the first time in this Court. I note, however, that other courts have rejected this argument. *See Williams v. Florida*, 399 U.S. 78, 84, 26 L. Ed. 2d 446, 451 (1970) ("That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."); *Bowler v. United States*, 480 A.2d 678, 682 n.8 (D.C. App. 1984) (trial court's refusal to instruct on self-defense did not penalize defendant for exercising his Fifth Amendment privilege not to testify: "Under certain circumstances, such as those at bar where indirect evidence of self-defense is insufficient to support an instruction, that fact does not constitute a penalty upon the exercise of fifth amendment rights."); *State v. Kutnyak*, 211 Mont. 155, 173, 685 P.2d 901, 910 (1984) ("The fact that the appellant had to testify or else risk not sufficiently establishing self-defense does not, under these circumstances, create a constitutional denial of his privilege against self-incrimination."); *State v. Seliskar*, 35 Ohio St. 2d 95, 96, 298 N.E.2d 582, 583 (1973) ("If a defendant cannot provide evidence on the issue of self-defense other than his own testimony, then, in order to avail himself of the defense, he must testify. In such event, the choice is that of the defendant, and, once he has decided to rely on self-defense and is required by the circumstances to testify in order to prove that defense, he necessarily must waive his constitutional right to remain silent."). *Compare Williams v. State*, 915 P.2d 371, 377 (Okl. Cr. 1996) (defendant could not, consistent with the Fifth Amendment, be required to testify as a prerequisite to being allowed to present indirect evidence of self-defense such as by cross-examination of the State's witnesses).

The dissent argues that the trial court erred in submitting the issue of involuntary manslaughter to the jury. I do not believe that we should address that issue. Defendant's trial counsel expressed no

concern about submission of involuntary manslaughter to the jury during the charge conference or after the trial court delivered its jury instructions. When the jury asked to have the instructions for voluntary and involuntary manslaughter re-read, defendant again did not object. The record on appeal contains a list of instructions that were omitted and that were "[e]rroneous[ly]" given; defendant lists only the flight instruction as an "Erroneous Instruction". Defendant has not assigned error to the submission of involuntary manslaughter to the jury nor has either party briefed the issue. It appears that defendant made a strategic decision—reflected both at trial and on appeal—that it was advantageous to him to allow the jury to consider involuntary manslaughter. I do not believe that this Court should, under these circumstances, address the involuntary manslaughter issue.

In any event, *State v. Ray*, 299 N.C. 151, 152, 261 S.E.2d 789, 791 (1980), recognized the established rule that the erroneous submission of involuntary manslaughter justifies a new trial only upon a showing that the error prejudiced the defendant. In *Ray*, the Supreme Court found prejudice based on the possibility that the jury would have accepted defendant's plea of self-defense had the trial court not erroneously instructed on involuntary manslaughter. Since I believe that the trial court properly refused to instruct as to self-defense, defendant was not prejudiced by the submission of involuntary manslaughter to the jury. *Id.* at 165-66, 261 S.E.2d at 798 (noting general rule that an erroneous charge on a lesser included offense is error favorable to the defendant when all of the evidence tends to support a greater offense).

HUNTER, Judge, dissenting.

I disagree with Chief Judge Eagles' conclusion that failure to instruct the jury on the law of self-defense was harmless error in light of the jury's verdict of guilty of involuntary manslaughter. Accordingly, I respectfully dissent.

*State v. Ray*, 299 N.C. 151, 261 S.E.2d 789 (1980), relied on by Chief Judge Eagles, ultimately stands for the proposition that it is prejudicial error to submit the offense of involuntary manslaughter to the jury in a case where the evidence tends to point toward an intentional shooting and where there is a "reasonable possibility" that a jury would find the shooting was done in self-defense and the defendant would thus be acquitted. *Id.* at 164-65, 261 S.E.2d at 797-98. "[T]he crime of involuntary manslaughter involves the commission of an act,

whether intentional or not, which in itself is not a felony or likely to result in death or great bodily harm." *Id.* at 158, 261 S.E.2d at 794. Therefore, it follows that an act undertaken in self-defense involving an intentional assault likely to result in death or bodily harm cannot be involuntary manslaughter. *See id.*

In this case, the trial court instructed the jury that to convict defendant of voluntary manslaughter they must find defendant "killed the victim by an intentional and unlawful act[.]" To convict defendant of involuntary manslaughter, the jury was instructed that they would have to find that defendant "acted in a criminally negligent way" and "this criminally negligent act proximately caused the victim's death." Clearly, the jury found that there was insufficient evidence to support a voluntary manslaughter conviction. Without, however, an instruction informing them that if they found that a killing may in some circumstances be justified, i.e., in self-defense, and result in acquittal, it is highly probable the jury believed they were required to find defendant guilty of at least some form of homicide. Thus, in this case as in *Ray*, the jury's consideration of self-defense, which would result in acquittal, was "short-circuited." *Id.* at 165, 261 S.E.2d at 798.

Furthermore, there is insufficient evidence to support the involuntary manslaughter conviction.[1] The only evidence in this case of an unintentional killing or one caused by criminal negligence is a lack of evidence of exactly what happened during the fight. This, however, simply leads to a myriad of possibilities as to how the victim was shot and ignores the lack of evidence of any act on the part of defendant that would rise to the level of criminal negligence.

Moreover, the actual evidence that is before us alternatively tends to show that, if anything, the shooting was an act *intended* to inflict bodily harm or death. This was not a case of a gun being discharged once as two people scuffled, instead the evidence is that the gun was fired three times and that the victim was shot twice and in two different places on his body: once in the arm and once in the

---

1. Judge Geer's separate concurring opinion indicates that the issue of whether it was proper to submit the charge of involuntary manslaughter to the jury is not properly before this Court. Defendant, however, moved to dismiss the involuntary manslaughter charge based upon insufficiency of the evidence and assigns as error and argues in his brief to this Court that there was insufficient evidence to support the submission of that charge to the jury. In my analysis, it is the insufficiency of the evidence to prove defendant actually committed the crime of involuntary manslaughter in combination with the failure to instruct the jury on self-defense that results in prejudicial error to defendant.

chest. Further, the shooting occurred during a fight that started after the victim kicked in a door and attacked defendant. *See, e.g., State v. Maddox*, 159 N.C. App. 127, 132, 583 S.E.2d 601, 604 (2003) (" 'nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred' "). This is all evidence pointing toward a shooting intended to cause harm to the victim, possibly in self-defense, and thus, as in Ray, there is no evidence the shooting was anything other than intentional. *See Ray*, 299 N.C. at 164-65, 261 S.E.2d at 798. Therefore, as in Ray, there was insufficient evidence to support the submission of the charge of involuntary manslaughter to the jury. *See id.* at 168, 261 S.E.2d at 799. Accordingly, defendant's involuntary manslaughter conviction should be reversed.