IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-502

 Filed: 17 December 2019

Guilford County, Nos. 16 CRS 24127, 24130, 70665

STATE OF NORTH CAROLINA

 v.

HENRY THOMAS HAIRSTON

 Appeal by defendant from judgments entered 2 November 2018 by Judge L.

Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals

14 November 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Anne J.
 Brown, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katy
 Dickinson-Schultz, for defendant.

 ARROWOOD, Judge.

 Henry Thomas Hairston (“defendant”) appeals from judgments entered upon

his convictions for voluntary manslaughter and possession of a controlled substance.

For the following reasons, we find no error.

 I. Background

 On 18 April 2016, defendant was indicted on one count each of first-degree

murder, possession of methamphetamine, and attaining habitual felon status.

Defendant’s charge for possession of methamphetamine was superseded by an
 STATE V. HAIRSTON

 Opinion of the Court

indictment for possession of 4-chloromethcathinone on 25 June 2018. Defendant’s

case came on for trial in Guilford County Superior Court before the Honorable L. Todd

Burke on 29 October 2018.

 At trial, Tashera Thaxton (“Ms. Thaxton”), Latoya Settle (“Ms. Settle”), and

defendant’s nephews Jerard and Charles McCollum (“Jerard” and “Charles”) testified

as follows. On the night of 13 March 2016, defendant and his nephews had driven

from Reidsville to celebrate a friend’s birthday at a Greensboro bar called Lucky 7’s.

They exited the bar when it closed at 2 a.m. and met Ms. Thaxton, Ms. Settle, and

defendant’s cousin Sharonda Irving (“Ms. Irving”), all of whom were friends from

Reidsville. In the parking lot, an individual from another group of around five men

approached Ms. Settle and asked if she would perform sexual acts for money.

Defendant, his nephews, and the women rebuked the man’s advances.

 The three groups then exited the parking lot in their respective automobiles,

with Jerard driving himself, Charles, and defendant, and Ms. Irving driving the

women in her silver minivan. At a red light, the other group of men pulled up

alongside Jerard’s vehicle, smashed a bottle against it, and proceeded to engage in a

high-speed pursuit of defendant and his nephews. Ms. Irving followed the vehicles.

Jerard feared for their lives and worried that the men would shoot at his car.

Detective Stanley Marrow and Officer Camara Gosmon of the Greensboro Police

Department were working an off-duty security detail in the parking lot of a

 -2-
 STATE V. HAIRSTON

 Opinion of the Court

Greensboro nightclub called Shooters on the night of 13 March 2016. Upon seeing a

police car, Jerard pulled into a parking lot in hopes that the presence of law

enforcement would de-escalate the situation. Ms. Irving’s vehicle arrived shortly

thereafter. Defendant and his nephews quickly exited the vehicle and were

immediately met with an attack from the other group of men. In the parking lot, a

large fight occurred in which Markos Leonard Jones (“Mr. Jones”) was killed.

 Testimony from Detective Marrow, Officer Gosmon, and other responding

officers tended to show that Detective Marrow and Officer Gosmon were engaged in

conversation in the otherwise empty parking lot when, at approximately 2:30 a.m.,

they became aware of a brawl of fifteen to twenty people breaking out. This brawl

consisted of up to four distinct fights between groups of several individuals. Neither

officer observed a weapon being used by any of the combatants. The officers

responded to the affray and, in the course of breaking up the first two fights, made

separate contact with both defendant and Mr. Jones. Mr. Jones told Officer Gosmon

that he was trying to break up a fight. Defendant told Detective Marrow that he was

trying to get those he knew to disperse from the parking lot. The officers called for

backup, because the brawl was too large for two officers to subdue.

 When the officers next saw defendant and Mr. Jones, the two were near each

other and Mr. Jones turned away from defendant, bent over clutching his neck, and

was bleeding profusely. Detective Marrow then asked two nearby individuals with

 -3-
 STATE V. HAIRSTON

 Opinion of the Court

“deep lacerations” on their lower arms who had a knife, and their response led

Detective Marrow to believe it was defendant. Defendant was the closest person to

Mr. Jones at this time. Defendant began to walk toward the silver minivan belonging

to Ms. Irving and, ignoring Detective Marrow’s repeated orders to halt, bumped aside

a woman standing by an open door of the minivan and made a “furtive move”

appearing to throw an item into the vehicle. Detective Marrow then arrested

defendant and found a controlled substance commonly known as “bath salts” on his

person. Officer Deon Carter then found a bloody knife in the driver’s seat of the

vehicle. Two investigating officers testified that defendant had blood on his shoes

and clothing. Detective Tony Hinson testified that, during defendant’s subsequent

interview at the police station, he repeatedly stated that he suffered no injuries in

the fight and did not need to go to the hospital.

 Private investigator Edward Cobbler (“Mr. Cobbler”) testified that he

interviewed defendant about the events in question on 31 March 2016. Defendant

admitted to him that he had obtained a knife from his nephew’s car. Defendant stated

that during the fight several individuals were stomping and hitting him on the

ground and he grabbed the knife from his pocket and “came out swinging[,]” cutting

several of his attackers. He then threw the knife in the silver minivan belonging to

Ms. Irving.

 -4-
 STATE V. HAIRSTON

 Opinion of the Court

 A forensic analyst from the State Crime Laboratory testified that Mr. Jones’

DNA was present on swabs collected from the knife and from blood spots on the

interior and exterior of the silver minivan. The medical examiner who conducted the

autopsy of Mr. Jones testified that his death was caused by a stab wound to his neck

consistent with the bloody knife on which his DNA was found.

 At the close of the State’s evidence, defendant moved to dismiss the charge of

first-degree murder and its lesser-included offenses. The trial court denied the

motion and defendant presented his own evidence as detailed above. Defendant

renewed his prior motion to dismiss at the close of all evidence. The court again

denied his motion. The trial court then held an off-the-record, in camera charge

conference with counsel for defendant and the State. An agreement was reached to

instruct the jury on, among other things, possession of the “bath salt” 4-

chloromethcathinone, first-degree murder, second-degree murder, and voluntary

manslaughter. The court instructed the jury on these offenses, and the jury

subsequently returned a verdict finding defendant guilty of voluntary manslaughter

and possession of 4-chloromethcathinone.

 II. Discussion

 On appeal, defendant argues that: (a) the trial court erred in denying his

motion to dismiss the charge of murder and the lesser-included offense of voluntary

manslaughter; (b) alternatively, if this issue has not been preserved for appellate

 -5-
 STATE V. HAIRSTON

 Opinion of the Court

review, defendant’s counsel rendered ineffective assistance in failing to preserve the

issue of evidentiary sufficiency; and (c) the trial court erred in its instructions to the

jury on voluntary manslaughter. We address each argument in turn.

 A. Motion to Dismiss

 Defendant argues that the trial court erred in denying his motion to dismiss

the charge of first-degree murder and the lesser-included offense of voluntary

manslaughter because there was insufficient evidence from which a reasonable jury

could convict him. We disagree.

 As an initial matter, we note that defendant has properly preserved this

assignment of error for our review by renewing his prior general motion to dismiss

based on the evidence at the close of all evidence pursuant to N.C.R. App. P. 10(a)(1),

(a)(3) (2019). Defendant’s counsel made a general motion to dismiss based on the

State’s evidence, and proceeded to argue more specifically that the evidence

warranted dismissal under the doctrine of self-defense. See, e.g., State v. Glisson, 251

N.C. App. 844, 847, 796 S.E.2d 124, 127 (2017) (“[A] general motion to dismiss for

insufficiency of the evidence preserves all issues regarding the insufficiency of the

evidence, even those issues not specifically argued before the trial court.”) (citation

omitted); State v. Pender, 243 N.C. App. 142, 152-53, 776 S.E.2d 352, 360 (2015)

(holding that defendant’s general motion to dismiss preserved all arguments as to

sufficiency of evidence to convict on all his charges, where counsel subsequently made

 -6-
 STATE V. HAIRSTON

 Opinion of the Court

more specific arguments concerning only some elements of some charges against

defendant during his argument in support of general motion to dismiss). Therefore,

we review the trial court’s denial of defendant’s motion to dismiss de novo to

determine whether substantial evidence supported the charge of voluntary

manslaughter. State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

 “ ‘Upon defendant’s motion for dismissal, the question for the Court is whether

there is substantial evidence (1) of each essential element of the offense charged, or

of a lesser offense included therein, and (2) of defendant’s being the perpetrator of

such offense. If so, the motion is properly denied.’ ” State v. Fritsch, 351 N.C. 373,

378, 526 S.E.2d 451, 455 (quoting State v. Barnes, 334 N.C. 67, 75, 430 S.E.2d 914,

918 (1993)), cert. denied, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). “Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.” State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

“In making its determination, the trial court must consider all evidence admitted,

whether competent or incompetent, in the light most favorable to the State, giving

the State the benefit of every reasonable inference and resolving any contradictions

in its favor.” State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation

omitted), cert. denied, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). “The trial court is not

required to determine that the evidence excludes every reasonable hypothesis of

 -7-
 STATE V. HAIRSTON

 Opinion of the Court

innocence before denying a defendant’s motion to dismiss.” State v. Barfield, 127 N.C.

App. 399, 401, 489 S.E.2d 905, 907 (1997) (citation omitted).

 Voluntary manslaughter is the intentional, unlawful killing of a human being

either: (1) perpetrated “by reason of sudden anger or ‘heat of passion’ that

temporarily removes reason and malice or (2) a premeditated and deliberated first-

degree murder or second-degree murder for which the defendant has an imperfect

right to self-defense.” State v. Alston, 161 N.C. App. 367, 373, 588 S.E.2d 530, 535

(2003) (citations omitted), aff’d, 359 N.C. 61, 602 S.E.2d 674 (2004). Because

defendant’s conviction for voluntary manslaughter could have resulted from the jury

finding that he committed second-degree murder but for an imperfect right of self-

defense, we need not decide whether the State produced substantial evidence of the

greater offense of first-degree murder.

 Second-degree murder is a killing done with malice and without premeditation

and deliberation. State v. Coble, 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000) (citations

omitted). Malice may be found from, among other things, “evidence that a person

intentionally inflicted a wound that results in death.” Id. at 451, 527 S.E.2d at 47

(citation omitted). An imperfect right of self-defense exists where: (1) “it appeared

to defendant and he believed it to be necessary to kill the deceased in order to save

himself from death or great bodily harm[;]” (2) this belief “was reasonable in that the

circumstances as they appeared to him at that time were sufficient to create such a

 -8-
 STATE V. HAIRSTON

 Opinion of the Court

belief in the mind of a person of ordinary firmness[;]” but (3) “the defendant, without

murderous intent, either was the aggressor in bringing on the affray or used excessive

force.” State v. Lyons, 340 N.C. 646, 661, 459 S.E.2d 770, 778 (1995) (citations

omitted). Excessive force is “more force than [is] necessary or reasonably appear[s]

to [the defendant] to be necessary under the circumstances to protect himself from

death or great bodily harm.” Id. (citation omitted).

 In the instant case, killing in the “heat of passion” and imperfect self-defense

by an aggressor were not theories advanced by the State; nor was the jury instructed

on such theories. Thus, to survive defendant’s motion to dismiss the charge of

voluntary manslaughter, the State was required to present substantial evidence that:

(1) defendant intentionally inflicted a wound upon Mr. Jones, (2) proximately causing

his death, (3) under an actual, reasonable belief that use of force was necessary to

prevent death or great bodily harm, (4) by use of force that was greater than was, or

appeared, necessary under the circumstances to prevent such harm. Viewed in a

light most favorable to the State, there was substantial evidence of each of these four

elements.

 First, the State put forth substantial evidence that defendant intentionally

wounded Mr. Jones with a knife. Viewed in a light most favorable to the State, the

evidence suggested that defendant and his nephews exchanged words with another

group of men leaving Lucky 7’s regarding their disrespect towards defendant’s female

 -9-
 STATE V. HAIRSTON

 Opinion of the Court

friends. Defendant and his nephews were then pursued by this group of men in a car

chase that ended in the Shooter’s parking lot. During the car chase, defendant

obtained a knife from his nephew’s car. Defendant and his nephews exited the vehicle

and immediately became involved in a large brawl with their pursuers. Defendant

used the knife to cut several people in the brawl, including Mr. Jones, and then

secreted it into his cousin’s nearby vehicle.

 Second, the State put forth substantial evidence that Mr. Jones’ death was

proximately caused by a stab wound to his neck from the knife in question. The

medical examiner who conducted Mr. Jones’ autopsy testified that his death was

caused by a stab wound to his neck consistent with the bloody knife on which his DNA

was found.

 Third, the State put forth substantial evidence that defendant stabbed Mr.

Jones due to an actual, reasonable belief that use of force was necessary to defend

himself from death or great bodily harm. Viewed in the State’s favor, the evidence

suggested that defendant and his nephews were aggressively pursued into the

Shooter’s parking lot by another group of men. This group of men attacked defendant

in the parking lot. Several of these men continued their assault against defendant

even after he fell to the ground. Defendant reasonably feared that he may face serious

harm if he did not take action to repel his attackers, and he was thus entitled to use

at least some degree of force.

 - 10 -
 STATE V. HAIRSTON

 Opinion of the Court

 Fourth and finally, the State put forth substantial evidence that defendant

used more force than was necessary in the circumstances to defend himself against

death or great bodily harm. Viewed in a light most favorable to the State, the

evidence suggests that stabbing Mr. Jones in the neck escalated the nature of the

brawl and exceeded what reasonably appeared necessary to defend himself in what

was essentially a collection of fistfights.

 The State put forth substantial evidence from which a reasonable juror could

find that defendant would have committed second-degree murder, but for his

entitlement to use self-defense that he abused by using excessive force. Therefore,

the trial court did not err in denying defendant’s motion to dismiss the charge of

voluntary manslaughter.

 B. Ineffective Assistance of Counsel

 Because we hold that defense counsel’s motions to dismiss adequately

preserved defendant’s challenge to sufficiency of the evidence for appellate review,

counsel did not render ineffective assistance on this ground and we need not further

review this claim.

 C. Jury Instructions for Voluntary Manslaughter

 Finally, defendant argues that the trial court plainly erred in its instructions

to the jury on voluntary manslaughter. We disagree.

 - 11 -
 STATE V. HAIRSTON

 Opinion of the Court

 Defendant first asserts that he has preserved this issue for appellate review.

The transcript reflects that the trial court briefly described the results of the off-the-

record charge conference. This included an agreement to give an instruction on first-

degree murder, second-degree murder, and voluntary manslaughter without

reference to any specific pattern instructions for each offense. Defendant contends

that the trial court’s synopsis of the charge conference, together with the similar

instruction ultimately given to the jury, implies that it agreed to give N.C.P.I. Crim.

206.10 (2018). Thus, any deviation from this requested pattern instruction would be

preserved for our review despite defense counsel’s subsequent failure to object to the

court’s ultimate instructions. See State v. Lee, 370 N.C. 671, 676, 811 S.E.2d 563, 567

(2018) (“When a trial court agrees to give a requested pattern instruction, an

erroneous deviation from that instruction is preserved for appellate review without

further request or objection.”). Based on the record before us, we cannot infer an

agreement to use a specific pattern instruction.

 Accordingly, our review is limited to plain error. N.C.R. App. P. 10(a)(2), (a)(4)

(2019); State v. Lawrence, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333-34 (2012).

 For error to constitute plain error, a defendant must
 demonstrate that a fundamental error occurred at trial. To
 show that an error was fundamental, a defendant must
 establish prejudice—that, after examination of the entire
 record, the error had a probable impact on the jury’s
 finding that the defendant was guilty. Moreover, because
 plain error is to be applied cautiously and only in the
 exceptional case, the error will often be one that seriously

 - 12 -
 STATE V. HAIRSTON

 Opinion of the Court

 affect[s] the fairness, integrity or public reputation of
 judicial proceedings.

Lawrence, 365 N.C. at 518, 723 S.E.2d at 334 (alteration in original) (internal

quotation marks and citations omitted). “In giving jury instructions, . . . the court is

not required to follow any particular form, as long as the instruction adequately

explains each essential element of the offense.” State v. Fletcher, 370 N.C. 313, 325,

807 S.E.2d 528, 537 (2017) (alteration, internal quotation marks, and citations

omitted). Using this guiding principle, we find no error in the trial court’s

instructions.

 Defendant first argues that the trial court plainly erred in its instructions on

voluntary manslaughter by failing to note that the jury would have to find beyond a

reasonable doubt that “(1) [defendant] killed Jones by an intentional and unlawful

act[ ] and (2) [defendant]’s act was the proximate cause of Jones’s [sic] death.” This

argument is unsupported.

 In its charge to the jury, the trial court first included a simple definition of each

charge it was to consider: first-degree murder, second-degree murder, and voluntary

manslaughter. The court briefly described voluntary manslaughter as follows:

 Voluntarily [sic] manslaughter on the facts in this case is
 if you find the defendant was acting in self[-]defense,
 whether he used excessive force, the defendant will be
 excused from first[-]degree murder and second[-]degree
 murder on the ground of self[-]defense . . . .

 - 13 -
 STATE V. HAIRSTON

 Opinion of the Court

Then the court went into greater detail on the doctrines of perfect self-defense and

imperfect self-defense by use of excessive force, noting that “[i]f the [S]tate fails to

prove that the defendant did not act in self[-]defense, you may not convict the

defendant of either first[-] or second[-]degree murder. However, you may convict the

defendant of voluntary manslaughter if the [S]tate proves that the defendant used

excessive force.” The court proceeded to enumerate each element the jury would have

to find beyond a reasonable doubt in order to convict defendant of each of the three

charges in succession. The full instruction on first-degree murder included a detailed

explanation of proximate causation. Together, the full instructions on second-degree

murder and voluntary manslaughter were as follows:

 For you to find the defendant guilty of second[-]degree
 murder, the [S]tate must prove beyond a reasonable doubt
 that the defendant unlawfully, intentionally, and with
 malice wounded the victim with a deadly weapon
 proximately causing the victim’s death.

 The [S]tate must also prove that the defendant did not act
 in self[-]defense.

 Voluntarily [sic] manslaughter on these facts is if you find
 the defendant was acting in self[-]defense and the
 defendant . . . used excessive force.

 Voluntarily [sic] manslaughter is committed if the
 defendant kills in self[-]defense but uses excessive force
 under the circumstances. The burden is on the [S]tate to
 prove beyond a reasonable doubt that the defendant did not
 act in self[-]defense.

 - 14 -
 STATE V. HAIRSTON

 Opinion of the Court

 However, if the [S]tate proves beyond a reasonable doubt
 that the defendant, though otherwise acting in self[-
 ]defense used excessive force, the defendant would be
 guilty of voluntarily [sic] manslaughter.

 If you do not find the defendant guilty of murder or
 voluntarily [sic] manslaughter, you must find the
 defendant not guilty.

The court then gave a final instruction on each of the three offenses, ending with the

following instruction on voluntary manslaughter:

 If you find from the evidence beyond a reasonable doubt
 that on or about the alleged date the defendant
 intentionally wounded the victim with a deadly weapon
 and thereby proximately caused the victim’s death, and
 that the defendant used excessive force, it would be your
 duty to find the defendant guilty of voluntarily [sic]
 manslaughter.

 However, if the [S]tate has failed to satisfy you beyond a
 reasonable doubt that the defendant did not act in self[-
 ]defense and that the defendant used excessive force, then
 the defendant’s actions . . . would be justified by self[-
 ]defense and it would be your duty to return a verdict of not
 guilty.

 The instant case is not one in which the trial court made a material

misstatement of the requirements to convict defendant of voluntary manslaughter

and later corrected itself. See State v. Cousins, 289 N.C. 540, 547-50, 223 S.E.2d 338,

343-45 (1976). Rather, the trial court merely omitted the actus reus and proximate

causation elements in some references to voluntary manslaughter directly preceded

 - 15 -
 STATE V. HAIRSTON

 Opinion of the Court

by descriptions of second-degree murder containing these elements. The trial court

ended with a full recitation of the elements of voluntary manslaughter.

 Read as a whole, the instructions clearly explain: (1) that, in order to find

defendant guilty of second-degree murder, the State was required to prove that

defendant proximately caused Mr. Jones’ death by intentionally wounding him with

a deadly weapon, and did not do so in self-defense; and (2) that, in order to find

defendant guilty of voluntary manslaughter, the State was required to prove the

same facts except that defendant acted in self-defense but used excessive force. This

instruction sufficiently explained each element the jury would have to find beyond a

reasonable doubt to convict defendant of voluntary manslaughter. Therefore, the

trial court did not err on this ground.

 Defendant further argues that “[t]he only option given to the jury to find

[defendant] not guilty was based on the jury’s determination that the State failed to

prove beyond a reasonable doubt that [defendant] did not act in self-defense and that

he did not use excessive force.” This argument is without merit. The instructions

clearly apprised the jury that, as with the charge of second-degree murder, it must

find defendant not guilty of voluntary manslaughter if the State failed to prove as a

preliminary matter that defendant intentionally wounded Mr. Jones or proximately

caused his death.

 - 16 -
 STATE V. HAIRSTON

 Opinion of the Court

 Because the jury was informed of the essential elements it would have to find

beyond a reasonable doubt in order to convict defendant of voluntary manslaughter,

the trial court did not err in its jury instructions.

 III. Conclusion

 For the foregoing reasons, we find no error.

 NO ERROR.

 Judges DILLON and DIETZ concur.

 - 17 -