DILLON, Judge.
 

 *816
 
 Stephen Paul Gomola ("Defendant") appeals from judgment entered upon a jury verdict finding him guilty of involuntary manslaughter on the
 
 *817
 
 theory that he committed an unlawful act which proximately caused the death of Stephen Johnson (the "Decedent"). Defendant argues that the trial court committed reversible error by refusing to give a jury instruction on "defense of others" as an affirmative defense to the unlawful act Defendant allegedly committed. We agree and order that the judgment be vacated and remand this matter for a new trial.
 

 I. Background
 

 In July 2013, Defendant was at a waterfront bar with friends in Morehead City. Defendant was involved in an altercation
 
 *799
 
 with approximately eight other individuals at the bar, including the Decedent. The altercation lasted only a few seconds, but resulted in the death of the Decedent.
 

 A surveillance video shows a partial view of the bar where the altercation took place. The video shows several individuals positioned along a railing at the bar overlooking a marina. The video shows Defendant standing next to his friend Jimmy. Jimmy is shown holding a drink in each hand and engaging in conversation with one or more individuals who were off-camera. Jimmy testified that the conversation began after he saw a patron throw a beer bottle over the railing into the water and that when he politely asked the patron not to do it again, the Decedent shoved Jimmy. The video shows Jimmy being pushed backwards by someone off-camera and then Defendant and another individual moving past Jimmy toward the person off-camera who had shoved Jimmy. The video does not show the rest of the altercation. Approximately 6-8 seconds later, the video shows patrons trying to locate the Decedent, who had fallen into the water.
 

 There was conflicting evidence regarding the role Defendant and other patrons played in the altercation. Several patrons testified that during the portion of the altercation which took place off-camera, Defendant "shoved," "pushed," or "flipped" the Decedent over a railing into the water. Other testimony suggested that Defendant's role in the altercation was limited to an initial shove right after his friend Jimmy was shoved and that the Decedent fell over the railing or was pushed over the railing by a different individual.
 

 In any event, the Decedent did not resurface. An autopsy revealed that the Decedent had a blood alcohol concentration of .30 or more at the time of his death. The stated cause of death was drowning while incapacitated due to head trauma, with alcohol intoxication as a contributing factor.
 

 *818
 
 The trial court instructed the jury that it could find Defendant guilty of involuntary manslaughter if it found beyond a reasonable doubt that (1) Defendant acted unlawfully, and that (2) Defendant's unlawful act proximately caused the victim's death. The trial court further instructed the jury that the underlying "unlawful act" allegedly committed by Defendant was the crime of participating in an "affray," defining this crime as "a fight between two or more persons in a public place so as to cause terror to the public."
 
 In re May
 
 ,
 
 357 N.C. 423
 
 , 426,
 
 584 S.E.2d 271
 
 , 274 (2003) (citing
 
 State v. Wilson
 
 ,
 
 61 N.C. 237
 
 , 237-38 (1867) ). Defendant requested an additional instruction on self-defense or defense of another in order to negate the "unlawful act" element of the offense. The trial court declined to give the requested instruction.
 

 The jury convicted Defendant of involuntary manslaughter, and the trial court sentenced him to 16-29 months imprisonment and fined him $10,000. Defendant timely appealed.
 

 II. Analysis
 

 On appeal, Defendant contends that the trial court erred when it refused his request to give the jury a "defense of others" instruction. We agree.
 

 Our Supreme Court defines involuntary manslaughter as "the unintentional killing of a human being, without malice, proximately caused by [either] (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission."
 
 State v. Wingard
 
 ,
 
 317 N.C. 590
 
 , 600,
 
 346 S.E.2d 638
 
 , 645 (1986) (quoting
 
 State v. Hill
 
 ,
 
 311 N.C. 465
 
 , 471,
 
 319 S.E.2d 163
 
 , 167 (1984) ).
 

 In the context of involuntary manslaughter, our Supreme Court has held that a defendant's unlawful or negligent act is
 
 a proximate cause
 
 of the victim's death if the act "is a cause that produced the result in continuous sequence and without which [the death] would not have occurred."
 
 State v. Cole
 
 ,
 
 343 N.C. 399
 
 , 416,
 
 471 S.E.2d 362
 
 , 370 (1996) (citation omitted). Our Supreme Court has further explained that a defendant is criminally culpable even if his unlawful act "[is] not [ ] the immediate cause of death. [A defendant] is legally accountable if the direct cause is the natural result of the criminal act. [Even though] [t]here may be more than one proximate cause[,] ... criminal responsibility
 
 *800
 
 arises when the act complained of caused or directly contributed to the death."
 
 State v. Cummings
 
 ,
 
 301 N.C. 374
 
 , 377-78,
 
 271 S.E.2d 277
 
 , 279 (1980) (citations omitted).
 

 Here, the jury was instructed that it could convict Defendant of involuntary manslaughter if the jury determined that Defendant committed
 
 *819
 
 the unlawful act of "affray" and that Defendant's act was a proximate cause of the Decedent's death. The jury was correctly instructed on the crime of "affray," as defined by our Supreme Court, as "a fight between two or more persons in a public place so as to cause terror to the public."
 
 May
 
 ,
 
 357 N.C. at 426
 
 ,
 
 584 S.E.2d at
 
 274 (citing
 
 Wilson
 
 ,
 
 61 N.C. at 237
 
 (1867) ). And the jury was correctly instructed that Defendant's act was a "proximate cause" of the Decedent's death if the jury determined that the act was "a cause without which the [Decedent's] death would not have occurred ... [and] th[at] [D]efendant's act need not have been the only cause, nor the last nor nearest cause[,] [but that it] is sufficient if [Defendant's act] occurred with some other cause acting at the same time which in combination with caused the death of the [Decedent]."
 

 We conclude that the above instructions were warranted as there was evidence from which the jury could conclude that Defendant unlawfully participated in an affray and that his participation was a proximate cause of the death of the Decedent.
 

 However, Defendant argues that the trial court committed reversible error by refusing to give
 
 his
 
 requested instruction on self-defense or "defense of others" as an affirmative defense to the crime of affray.
 
 [1]
 
 Defendant contends that the evidence,
 
 when viewed in the light most favorable to him
 
 , shows that his participation in the fight was limited to a single shove. Defendant further contends that his single shove was legally justified because he was defending his friend, and the shove was therefore not "unlawful," though it may have resulted in others becoming aggressive and resulted in another person directly forcing the Decedent into the water. For the reasons stated below, we must agree. Specifically, it is
 
 reasonably possible
 
 that the jury determined that Defendant participated in the affray; that his participation was a proximate cause-though maybe not the final cause-of the Decedent's death; and that, if given the opportunity, the jury would have determined that Defendant's participation was lawful because he acted reasonably in defense of his friend Jimmy. Indeed, the video evidence only shows Defendant deliver a single shove immediately after his friend Jimmy was shoved; the video does not show the rest of the affray.
 

 Our Supreme Court has previously sanctioned the use of self-defense by a defendant as an appropriate defense when the defendant has been accused of unlawfully participating in an affray, stating as follows:
 

 *820
 
 If a person be without fault in bringing on an affray, he may [act] in self-defense if it is necessary, or appears to him to be necessary[.] ... The reasonableness of his apprehension is for the jury to determine from the circumstances as they appeared to him. This defense cannot be invoked when a person aggressively and willingly enters into a fight without legal excuse or provocation. And in exercising the right of self-defense one can use no more force than was or reasonably appeared necessary under the circumstances[.]
 

 State v. Wynn
 
 ,
 
 278 N.C. 513
 
 , 519,
 
 180 S.E.2d 135
 
 , 139 (1971),
 
 overruled on other grounds by
 

 State v. Hickey
 
 ,
 
 317 N.C. 457
 
 ,
 
 346 S.E.2d 646
 
 (1986) (citations omitted). And our General Assembly has provided that a person "is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself
 
 or another
 
 against the other's imminent use of unlawful force,"
 
 N.C. Gen. Stat. § 14-51.3
 
 (a) (2013) (emphasis added), and that a person who uses force as permitted by
 
 N.C. Gen. Stat. § 14-51.3
 
 (a) is "justified in using such force and is immune from civil or criminal liability for the use of such force[.]"
 
 N.C. Gen. Stat. § 14-51.3
 
 (b).
 

 Accordingly, where, as here, the State prosecutes a defendant for involuntary manslaughter
 
 *801
 
 based on the theory that the defendant committed an "unlawful" act-rather than based on a theory that the defendant committed a "culpably negligent" act-the defendant is entitled to all instructions supported by the evidence which relate to the unlawful act, including any recognized affirmative defenses to the unlawful act.
 
 See
 

 Calhoun v. Highway Comm'n
 
 ,
 
 208 N.C. 424
 
 , 424,
 
 181 S.E. 271
 
 , 272 (1935) (noting that a defendant is entitled to a specific jury instruction if it is a correct statement of the law and is supported by the evidence presented at trial).
 

 In determining whether the instruction is supported by the evidence, the evidence must be viewed in the light most favorable
 
 to the defendant
 
 .
 
 See
 

 State v. Moore
 
 ,
 
 363 N.C. 793
 
 , 796,
 
 688 S.E.2d 447
 
 , 449 (2010) (holding that in determining whether an instruction on self-defense must be given, "the evidence is to be viewed in the light most favorable to the defendant"). Further, our Supreme Court has instructed that "[w]hen supported by competent evidence, self-defense unquestionably becomes a substantial and essential feature of a criminal case[.]"
 
 State v. Deck
 
 ,
 
 285 N.C. 209
 
 , 215,
 
 203 S.E.2d 830
 
 , 834 (1974).
 

 *821
 
 Here, there was conflicting evidence as to how the Decedent ended up in the water and the level to which Defendant participated in the affray. Indeed, when viewed in the light most favorable to the State, the evidence shows that Defendant unlawfully assaulted the Decedent, knocking the Decedent into the water. However, other evidence
 
 supports
 
 Defendant's argument that instruction on defense of others was warranted: For example, there was evidence that Jimmy "absolutely felt threatened" when the Decedent shoved him; that Defendant immediately advanced toward the Decedent in response to the Decedent's shove; that the Decedent punched and kicked Defendant; that another person pushed Defendant into the Decedent, "who eventually fell into the water"; and that Defendant only struck the Decedent one time.
 

 Taking the evidence in the light most favorable to Defendant, as we
 
 must
 
 do, we conclude that Defendant was entitled to the "defense of others" instruction to supplement the "affray" instruction. Specifically, based on the evidence
 
 viewed in the light most favorable to Defendant
 
 , the jury could have determined that Defendant's participation in the affray was limited to one or a few pushes or blows at the beginning, thrown merely to protect his friend Jimmy who had just been assaulted by the Decedent. The jury could have determined that Defendant's push was
 
 a
 
 proximate cause in the chain that resulted in the Decedent going over the railing 6-8 seconds later. And based on these determinations, the jury would still have been bound to convict Defendant based on the instructions as given: Defendant engaged in a fight that involved a number of people and his participation was a proximate cause leading to the Decedent's death. However, had the jury also been given the "defense of others" instruction, the jury may have determined that Defendant's involvement in the affray-though a proximate cause of the Decedent's death-was lawful because Defendant merely used the force necessary to protect his friend from an ongoing assault.
 
 See
 

 In re Wilson
 
 ,
 
 153 N.C. App. 196
 
 , 198,
 
 568 S.E.2d 862
 
 , 863 (2002) (citing
 
 State v. Herrell
 
 ,
 
 107 N.C. 944
 
 , 946-47,
 
 12 S.E. 439
 
 , 440 (1890) ("A claim of self-defense may be used to defeat a charge of affray where the [ ] defendant is without fault in provoking, engaging in, or continuing a difficulty with another.").)
 

 We take no position as to whether Defendant did, in fact, act lawfully. Again, there was considerable evidence in the record showing that Defendant acted unlawfully. Specifically, several witnesses testified to their individual recollections of the event: "[Defendant was] punching [the Decedent] until he fell over the side [into the water]"; "I saw [Defendant] hit the [Decedent] five or six times"; "[I] saw [Defendant] punch another man multiple times in the face and the chest or stomach
 
 *822
 
 and then grab him by the knees and throw him over the railing into the water"; Defendant was the person who pushed the Decedent into the water; and Defendant "flip[ped] somebody over the railing[.]" However, when Defendant's evidence, taken as true, is sufficient to show that he acted lawfully in self-defense or in defense of another, the instruction "must be given even
 
 *802
 
 though the State's evidence is contradictory."
 
 Moore
 
 ,
 
 363 N.C. at 796
 
 ,
 
 688 S.E.2d at
 
 449 ;
 
 see also
 

 State v. Dooley
 
 ,
 
 285 N.C. 158
 
 , 163,
 
 203 S.E.2d 815
 
 , 818 (1974) ("Where there is evidence that defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence.").
 

 Accordingly, we hold that the evidence presented at trial, viewed in the light most favorable to Defendant, was sufficient to warrant the instruction of the jury on the issue of defense of others. Thus, the trial court's failure to give the instruction was error. We further hold that there is a reasonable possibility that had this error not been committed, a different result would have been reached at trial.
 
 See
 

 Dooley
 
 , 285 N.C. at 166, 203 S.E.2d at 820 ("[T]he trial court's failure to include [an instruction on self-defense] in its final mandate to the jury was prejudicial error [that] entitle[d] defendant to a new trial."). There were contradictory witness accounts of the altercation, the first trial ended with a deadlocked jury, and the prosecutor argued in closing that self-defense/defense of others was irrelevant.
 

 We note the State's argument that self-defense is not a defense to involuntary manslaughter based on
 
 State v. Ray
 
 ,
 
 299 N.C. 151
 
 ,
 
 261 S.E.2d 789
 
 (1980). However, the State's argument is misplaced. The issue in the present case is
 
 not
 
 whether self-defense/defense of others is necessarily an affirmative defense to the crime of involuntary manslaughter, but rather whether it is an affirmative defense to the crime of affray-the "unlawful act" that the State used as the basis for the involuntary manslaughter charge. In any event, the Supreme Court in
 
 Ray
 
 specifically provided that the result in that case "should not be read as casting any doubt on the validity of earlier decisions of ... the Court of Appeals[,]" and limited its holding to an issue involving erroneous submission of lesser included offenses to the jury.
 
 Ray
 
 ,
 
 299 N.C. at 167
 
 ,
 
 261 S.E.2d at 799
 
 . In
 
 Ray
 
 , our Supreme Court highlighted two cases from our Court which illustrate the relationship between self-defense and involuntary manslaughter:
 
 State v. Walker
 
 ,
 
 34 N.C. App. 485
 
 ,
 
 238 S.E.2d 666
 
 (1977) and
 
 State v. Spinks
 
 ,
 
 39 N.C. App. 340
 
 ,
 
 250 S.E.2d 90
 
 (1979). Both
 
 Walker
 
 and
 
 Spinks
 
 involved situations where the trial court submitted the charge of involuntary manslaughter to the jury based on an "unlawful act" of the defendant.
 

 *823
 
 In
 
 Spinks
 
 , the defendant was convicted of involuntary manslaughter based on the unlawful act of pointing a gun. Our Court recognized that "an intentional pointing of a gun violates the statute only if it is done without legal justification," concluding that "if the jury found that the defendant acted in self-defense they
 
 could not have found her guilty of involuntary manslaughter
 
 [.]"
 
 Spinks
 
 ,
 
 39 N.C. App. at 343
 
 ,
 
 250 S.E.2d at 93
 
 (emphasis added). Our Court acknowledged that the trial court erred when it instructed the jury that the "defendant's act was unlawful," because it took the opportunity away from the jury to decide whether the defendant's pointing of the gun was, in fact, lawful.
 

 Id.
 

 In
 
 Walker
 
 , our Court found no error where the trial court instructed the jury that the defendant's act was unlawful because it was clear from the form of the jury charge that the jury had specifically considered and rejected the defendant's theory of self-defense-and had therefore determined that the defendant's act was unlawful-
 
 before
 
 considering the charge of involuntary manslaughter.
 
 See
 

 Walker
 
 ,
 
 34 N.C. App. at 487
 
 ,
 
 238 S.E.2d at 667
 
 .
 

 Thus, these two cases, which we once again emphasize were left undisturbed by the Supreme Court in
 
 Ray
 
 , demonstrate that
 
 Ray
 
 was not intended to prevent a defendant from asserting a recognized affirmative defense to an underlying unlawful act when charged with involuntary manslaughter in order to show that he, in fact, acted lawfully.
 

 We also note our holding in
 
 State v. Alston
 
 that "self-defense, as an
 
 intentional act
 
 , [cannot] serve as an excuse for the negligence or recklessness required for a conviction of involuntary manslaughter" under the culpable negligence prong.
 
 See
 

 State v. Alston
 
 ,
 
 161 N.C. App. 367
 
 , 375,
 
 588 S.E.2d 530
 
 , 536 (2003). However, this holding is inapposite to the present case because here, the theory of the State's case is that Defendant
 
 *803
 

 intentionally
 
 committed an unlawful act by participating in an affray. And certainly self-defense/defense of others may serve as an excuse for intentionally participating in a fight. Therefore, one whose participation in a fight proximately causes the death of another is not guilty of involuntary manslaughter unless his participation is was unlawful.
 

 III. Conclusion
 

 We hold that, in this case, the lack of a self-defense/defense of others instruction deprived the jury of the ability to decide the issue of whether Defendant's participation in the altercation was lawful. A determination by the jury that Defendant's participation was lawful would have negated the "unlawful act" element of involuntary manslaughter
 
 *824
 
 and would have compelled the jury to return a verdict of "not guilty." Therefore, because the trial court failed to include an instruction on self-defense/defense of others in its final mandate to the jury, Defendant is entitled to a new trial.
 

 NEW TRIAL.
 

 Judges DAVIS and INMAN concur.
 

 [1]
 

 Specifically, defense counsel stated that Defendant sought an "instruct[ion] on self-defense or defense of another as far as the misdemeanor instruction [on the crime of affray] goes."