IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-381

No. COA20-633

Filed 7 June 2022

Guilford County, No. 18CRS088489, 19CRS25229, 19CRS25462

STATE OF NORTH CAROLINA

v.

DOMINIQUE ALEXANDER WILLIAMS

Appeal by Defendant from judgment entered 25 February 2020 by Judge Michael D. Duncan in Guilford County Superior Court. Heard in the Court of Appeals 24 August 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Mary Carla Babb, for the State-Appellee.*

*Kathryn L. VandenBerg for Defendant-Appellant.*

COLLINS, Judge.

¶ 1 Defendant Dominique Alexander Williams appeals a judgment entered upon a jury's verdicts of guilty of second-degree murder and of attaining violent habitual felon status, and Defendant's guilty plea of possession of a firearm by a felon. Defendant contends that the trial court erred by denying his motion to dismiss the murder charge for insufficient evidence and by failing to correctly instruct the jury on defense of others. The trial court did not err by denying Defendant's motion to

dismiss the murder charge. However, following the North Carolina Supreme Court's decision in *State v. McLymore*, 380 N.C. 185, 2022-NCSC-12, we conclude that the trial court prejudicially erred by failing to fully instruct the jury on defense of others. Accordingly, we vacate the trial court's judgment and remand for a new trial.

## I. Facts

The evidence at trial tended to show the following: On the night of 16 November 2018, Defendant Dominique Williams went out for drinks with his cousin, Michael Williams; Defendant's girlfriend, Tyler Reid; and Michael's girlfriend, Ciara Jackson.

Michael had a history of a violent temper, aggression, and physical abuse. Ciara testified to enduring repeated assaults by Michael, stating the assaults "got more violent every time." At one point in their relationship, Michael stood over Ciara and stomped on her head while she lay on the ground. Another time, Michael kicked Ciara so hard he broke his own leg. That same day, he attacked Ciara while she drove him home, causing her car to swerve into a guardrail. On more than one occasion, when Michael was attacking Ciara, Defendant intervened. Michael once pulled a gun on Defendant when Defendant was trying to protect Ciara; Defendant also had a gun on him at the time, but did not brandish it. At one point, Michael and Ciara broke up. Shortly thereafter, Ciara filed assault charges against Michael and

sought a domestic protection order.  The two soon got back together and Ciara did not pursue the charges.

¶ 4        On 16 November 2018, Defendant, Michael, Tyler, and Ciara met and drank tequila at Tyler's house before driving in Ciara's car to a Greensboro bar.  At the bar, Michael got drunk.  The group left in Ciara's car with Ciara driving.

¶ 5        While on the road, Michael and Ciara got into an argument about another woman Michael had been seeing.  Michael said to Ciara, "Bitch, I'll kill you."  Then Michael began hitting Ciara while she was driving; he hit her in the head with a beer bottle and punched her with his fists.

¶ 6        Tyler told Ciara to pull over.  Once on the side of the road, Michael and Ciara got out of the car, and Michael aggressively approached Ciara.  Defendant broke up the fight and Michael calmed down somewhat.  The group got back in the car and back onto the road, whereupon Michael again attacked Ciara, who was still driving; he pulled her hair and hit her in the face.  Defendant said to Michael, "You're always doing this."  Tyler told Ciara to pull over to avoid having an accident.  Ciara pulled over in front of a TRD Motorsports.[1]  Ciara got out of the car and ran towards Michael, who had also stepped out of the car, and pushed him.

---

[1] These events were captured on a nearby security camera.  The video tape of the events of the shooting was introduced and played for the jury at trial as State's Exhibit #6.

¶ 7        During this altercation, Ciara and Michael ended up in the front seat of the car with Michael on top of Ciara, beating her the whole time. Ciara feared Michael would kill her and she fought back. Tyler tried to pull Michael off Ciara. Michael got out of the car, pushed Tyler to the ground, and said to Defendant, "Come get your bitch." Michael then resumed attacking Ciara.

¶ 8        Defendant, who was standing on the opposite side of the car from Michael, came around the car and shot at least two bullets, hitting Michael in the chest. The group put Michael, who was still conscious, into the car and proceeded to the High Point Hospital.

¶ 9        While driving to High Point, Defendant was on the phone with an unidentified person. He told that person that Michael had been shot in a drive-by-shooting by a person in a gray Dodge Challenger. The group pulled off the highway at the High Point exit. While stopped at an intersection, Tyler got out of the car and started to walk home. Defendant also got out of the car and walked away.

¶ 10       Ciara realized Michael had stopped breathing and called 911.[2] She told the 911 operator that Michael had been shot by someone in a gray Dodge Challenger in a drive-by shooting. Police officers arrived and took Ciara in for questioning. At the police station, Ciara's version of events changed. She first told officers that Michael

---

[2] The transcript of the 911 call was introduced as State's Exhibit #41.

had been shot in a drive-by, but eventually she told them that Defendant had shot Michael. Michael died from the gunshot wounds.

¶ 11 The following day, 17 November 2018, Defendant turned himself in at the police station. He stated that he had "shot his cousin." Defendant was taken into custody.

## II. Procedural History

¶ 12 On 4 March 2019, the Guilford County Grand Jury indicted Defendant for first-degree murder, possession of a firearm by a felon ("PFF"), and attaining violent habitual felon status.

¶ 13 The case came on for trial on 17 February 2020. Defendant pled guilty to PFF and not guilty to the remaining charges. Defendant moved to prohibit the State from referencing Defendant's prior felony convictions, including his contemporaneous PFF guilty plea, if Defendant did not testify. The trial court granted the motion. No evidence was presented on Defendant's prior felonies or contemporaneous PFF guilty plea.

¶ 14 At the close of the State's evidence, Defendant moved to dismiss the murder charge on grounds of insufficient evidence. The trial court denied the motion.

¶ 15 During the charge conference, Defendant requested a jury instruction on defense of others. The trial court denied Defendant's request on the basis that, as a matter of law, Defendant was disqualified from claiming the defense under N.C. Gen.

Stat. § 14-51.4 and this court's decision in *State v. Crump*, 259 N.C. App. 144, 151, 815 S.E.2d 415, 421 (2018), *rev'd on other grounds*, 376 N.C. 375, 851 S.E.2d 904 (2020).

¶ 16        The trial court gave a limited defense of others instruction on the charges of first-degree and second-degree murder, stating only that to find Defendant guilty of first-degree or second-degree murder, the State must prove in addition to the elements of first-degree or second-degree murder, "that the defendant did not act in lawful defense of another." The trial court also gave an instruction on imperfect defense of others in the voluntary manslaughter charge. The trial court did not reference defense of others in its final mandate to the jury on either the first or second-degree murder charges; but did include the imperfect self-defense instruction in its final mandate on the voluntary manslaughter charge.

¶ 17        On 25 February 2020, the jury found Defendant guilty of second-degree murder and of attaining violent habitual felon status. The trial court entered judgment and sentenced Defendant to life imprisonment without parole. Defendant appealed.

### III.    Discussion

¶ 18        Defendant contends the trial court erred by (1) failing to fully instruct the jury on defense of others, (2) denying Defendant's motion to dismiss the murder charge for insufficient evidence, and (3) instructing the jury on the aggressor doctrine.

## A. Defense of Others Jury Instruction

¶ 19        Defendant argues that the trial court erred by failing to instruct the jury on defense of others in its instructions on first-degree and second-degree murder.

¶ 20        A trial court's decisions regarding jury instructions are reviewed de novo. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). A trial court must give the substance of a requested jury instruction if it is "correct in itself and supported by [the] evidence[.]" *State v. Locklear*, 363 N.C. 438, 464, 681 S.E.2d 293, 312 (2009) (citation omitted). If there is sufficient evidence, when taken in the light most favorable to the defendant, to support a defense of others instruction, "the instruction must be given even though the State's evidence is contradictory." *State v. Montague*, 298 N.C. 752, 755, 259 S.E.2d 899, 902 (1979). "[A]n error in jury instructions is prejudicial and requires a new trial only if 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'" *State v. Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) (citation omitted) (quoting N.C. Gen. Stat. § 15A-1443(a) (2007)). The burden to show prejudice is on the defendant. N.C. Gen. Stat. § 15A-1443(a) (2020).

¶ 21        N.C. Gen. Stat. § 14-51.3(a)(1) provides, in pertinent part, that "a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if . . . [h]e or she reasonably believes that such force

is necessary to prevent imminent death or great bodily harm to himself or herself or another." N.C. Gen. Stat. § 14-51.3(a)(1) (2020). However, "[t]he justification described in . . . [N.C. Gen. Stat. §] 14-51.3 is not available to a person who used defensive force and who . . . [w]as attempting to commit, committing, or escaping after the commission of a felony." *Id*. § 14-51.4(1) (2020). This Court held in *Crump* that N.C. Gen. Stat. § 14-51.4(1) does not require a causal nexus between the disqualifying felony and the defendant's use of defensive force for that statutory provision to disqualify the defendant from pleading he was justified in his use of that force. 259 N.C. App. at 151, 815 S.E.2d at 420.

¶ 22    In *McLymore*, the Supreme Court overruled the above-noted portion of *Crump* and held that the felony disqualifier of N.C. Gen. Stat. § 14-51.4(1) requires an immediate causal nexus between the disqualifying felony and the "confrontation during which the defendant used force." *McLymore*, 2022-NCSC-12, ¶¶ 14, 30. The Court also held that N.C. Gen. Stat. § 14-51.3 supplants the common law on all aspects of self-defense addressed by its provisions. *Id*. at ¶ 12.

¶ 23    The defendant in *McLymore* claimed he acted in self-defense when he shot and killed the victim in the victim's car, dumped the body, and fled. *Id*. at ¶ 4. Over the defendant's objection, the trial court instructed the jury that a defendant was not entitled to self-defense if he was committing the offense of possession of a firearm by a felon, a crime for which the defendant had not been indicted. *Id*. at ¶¶ 6, 33. The

defendant was convicted of first-degree murder, felony speeding to elude arrest, and armed robbery. *Id.* at ¶ 6. The Supreme Court held that the trial court erred by failing to instruct the jury on the causal-nexus requirement. *Id.* at ¶¶ 14, 30. The Supreme Court explained that

> although [the defendant] admitted that he had previously been convicted of a felony offense and was possessing a firearm at the time he used deadly force, the trial court's failure to properly instruct the jury denied him the opportunity to dispute the existence of a causal nexus between his violation of N.C. [Gen. Stat.] § 14-415.1 and his use of force and to assert any affirmative defenses.

*Id.* at ¶ 2.

¶ 24    In light of the Supreme Court's decision in *McLymore*, the trial court in this case erred by concluding that Defendant's conviction for possession of a firearm by a felon disqualified him per N.C. Gen. Stat. § 14-51.4(1) from receiving a perfect defense-of-another instruction, and by "failing to instruct the jury that the State was required to prove an immediate causal nexus between his commission of a felony offense and the circumstances giving rise to his perceived need to use defensive force." *Id.* at ¶ 13. We note that the Supreme Court's opinion in *McLymore* was issued while the present case was pending on appeal. Thus, the trial court did not have the benefit of that opinion when it conducted the trial.

¶ 25    Moreover, the trial court's errors were prejudicial. "[W]here competent evidence of self-defense is presented at trial, the defendant is entitled to an

instruction on this defense, as it is a substantial and essential feature of the case." *State v. Morgan*, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (citations and emphasis omitted). "In determining whether the instruction is supported by the evidence, the evidence must be viewed in the light most favorable to the defendant." *State v. Gomola*, 257 N.C. App. 816, 820, 810 S.E.2d 797, 801 (2018) (emphasis omitted).

¶ 26    At trial, the following evidence was presented that, when taken in a light most favorable to Defendant, would support a defense of others instruction and a causal nexus instruction: Ciara testified that Michael had a history of violent and aggressive behavior towards her. Defendant had, on previous occasions, come to Ciara's aid to protect her from Michael's aggression. On one occasion, when Michael was beating Ciara and Defendant had intervened to protect her, Michael pulled a gun on Defendant.

¶ 27    Leading up to the point when Defendant shot Michael, Michael repeatedly attacked Ciara while she was driving, despite her pleas to stop. When Michael climbed on top of her in the car she feared for her life. Michael told Ciara he would "kill her" and she believed him. Defendant was present during this time and witnessed the aggression toward Ciara.

¶ 28    Moreover, in light of this evidence, there is a reasonable possibility that, had the jury been instructed on defense of others and the causal nexus requirement, the jury would have determined both that there was no causal nexus between

Defendant's felonious possession of a firearm and Defendant's use of defensive force such that defense of others was available to justify Defendant's force, and that Defendant acted in defense of Ciara when he used force against Michael. Accordingly, the trial court erred by failing to instruct the jury on perfect defense-of-another and failing to instruct the jury that the State was required to prove an immediate causal nexus between his commission of possession of a firearm by a felon and the circumstances giving rise to his perceived need to use defensive force.

**B. Sufficient Evidence that Defendant did not act in Defense of Another**

¶ 29        Defendant also argues that the trial court erred by denying his motion to dismiss the murder charge because the State failed to offer sufficient evidence that Defendant did not act in defense of Ciara.

¶ 30        On a defendant's motion to dismiss a charge for insufficient evidence, "the question for the [trial court] is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent,

in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994). On appeal, the trial court's denial of a motion to dismiss is reviewed de novo. *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007).

¶ 31     "First-degree murder is the unlawful killing of a human being with malice and with a specific intent to kill, committed after premeditation and deliberation." *State v. Cozart*, 131 N.C. App. 199, 202, 505 S.E.2d 906, 909 (1998). "Second-degree murder is defined as (1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation." *State v. Arrington*, 371 N.C. 518, 523, 819 S.E.2d 329, 332 (2018) (quotation marks and citation omitted). Malice which supports a conviction of second-degree murder is either actual, express malice, or acting in a manner "which is inherently dangerous to human life . . . [in that it is] so reckless[ ] and wanton[ ] as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief." *State v. Reynolds*, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982). Additionally, where there is evidence that a defendant charged with murder acted in defense of another, the State has the burden to prove beyond a reasonable doubt that the defendant did not act in defense of another. *See, e.g.*, *State v. Potter*, 295 N.C. 126, 143, 244 S.E.2d 397, 408 (1978) (explaining the rule in the context of self-defense).

¶ 32   N.C. Gen. Stat. § 14-51.3, which closely tracks the common law definition of the right to self-defense, provides that "a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if . . . [h]e or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another."   N.C. Gen. Stat. § 14-51.3(a); *see McLymore*, 2022-NCSC-12, ¶ 11.

¶ 33   Here, the State presented substantial evidence from which a rational juror could conclude that Defendant did not act in defense of another, including that: Defendant fired his gun three times at Michael and Michael was shot twice; Ciara's injuries were not serious and not consistent with the degree of attack described by the testimony; Defendant did not act quickly to come to Ciara's aid, but rather took his time before advancing; Defendant was frustrated at Michael prior to shooting him saying, "You're always doing this"; Ciara and Tyler gave inconsistent accounts to the police of the events that transpired the night Michael was shot; Ciara lied to the police when telling them that Michael had been shot in a drive-by shooting; and Defendant walked away from the car on the way to taking Michael to the hospital.

¶ 34   Viewed in the light most favorable to the State, this was sufficient evidence from which a rational juror could conclude that Defendant did not act in defense of Ciara.   Accordingly, the trial court did not err by denying Defendant's motion to dismiss the charges of first-degree and second-degree murder.

¶ 35    In light of the above conclusions, we do not address Defendant's remaining argument.

## IV.    Conclusion

¶ 36    We vacate the judgments entered upon Defendant's convictions for second-degree murder and attaining violent habitual felon status, and remand for a new trial.

VACATED AND REMANDED FOR NEW TRIAL.

Chief Judge STROUD and Judge DIETZ concur.